**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES DOLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| -vs- | ) | Case Number: 2019 CV 03890 |
| | ) | |
| SALVADOR GODINEZ, JOHN BALDWIN, | ) | |
| RANDY PFISTER, TARRY WILLIAMS, | ) | |
| NICHOLAS LAMB and MARCUS HARDY, | ) | |
| ILLINOIS DEPARTMENT OF CORRECTIONS, | ) | |
| DR. DIMITRIOS PATRIANAKOS, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT**

Plaintiff, JAMES DOLIS, by and trough his attorney James J. Macchitelli, alleges against

the Defendants, DR. DIMITRIOS PATRIANAKOS, ILLINOIS DEPARTMENT OF

CORRECTIONS, SALVADOR GODINEZ, JOHN BALDWIN, RANDY PFISTER, TARRY

WILLIAMS, NICHOLAS LAMB and MARCUS HARDY, and states as follows:

**INTRODUCTION**

1.      Stateville Correctional Center is a maximum security prison located in Crest Hill,

Illinois, that houses offenders in Illinois Department of Corrections ("IDOC") custody and

control ("Stateville").  Plaintiff, JAMES DOLIS ("Dolis"), was an inmate and incarcerated from

February 11, 1999, through June 9, 2017, was placed in Stateville from 2012 through 2016 and

part of 2017 and was incarcerated in various prison cells in F-House.  At all relevant times,

James Dolis was in the care, custody, and control of Stateville.

2.      In March of 2017, James Dolis was diagnosed with stage 3 squamous cell cancer

of the right maxillary sinus.

3.    Throughout his incarceration at Stateville, James Dolis was repeatedly subjected to inhumane prison conditions.   These horrific conditions included the following:

a.    mold growing every where;

b.    raw sewage in flooding and pooling water;

c.    infestation of vermin including mice, roaches, and spiders;

d.    structural deterioration that included leaking sewage;

e.    restricted air circulation;

f.    unsanitary and tainted drinking water; and

g.    extreme cold and substantial heat.

4.    As a result of the inhumane prison conditions, James Dolis acquired cancer.

5.    James Dolis and numerous other inmates repeatedly made complaints about all of the horrific conditions mentioned above.  Numerous other inmates filed complaints at law complaining about the horrific condition mentioned above.  All of James Dolis's complaint and the complaint of several other inmates went unanswered.

6.    James Dolis's claims were echoed in an independent report in October of 2016, which concluded that Stateville's F-House was inhumane and degrading to its prisoners.  The described conditions included vermin infestation, poor ventilation, extreme temperatures, and structural deterioration beyond repair.

7.    Shortly after this report, IDOC announced the closure of Stateville's F-House on December 1, 2016.   Governor Rauner expressed that the decision to close F-House was appropriate because the cells were uninhabitable, hazardous, and promoted chaos.

8.    Despite knowledge of the hazardous conditions at F-House, and while James

Dolis was housed there in F-House, Defendants were deliberately indifferent to the inhumane conditions to which James Dolis and all the other inmates were exposed.   Defendants ignored James Dolis's repeated pleas to have his cell cleaned and exterminated, and failed to make reasonable efforts to remedy those conditions while James Dolis was imprisoned at Stateville.

9.      The Defendants' indifference caused serious injuries to James Dolis and the inhumane conditions that were allowed to continue to exist for several years caused James Dolis to acquire squamous cell carcinoma of his right nostril and caused James Dolis to suffer extreme and severe pain and to become physically disfigured and to suffer severe emotional distress.

10.     The  Eighth  Amendment  protects  prisoners like James Dolis against cruel and unusual punishment.  Such protections extend to cover deliberate indifference to inhumane prison conditions and deliberate indifference that caused James Dolis to acquire a tragic, punishing, deadly disease, cancer.

11.     In summary, from 2012 through 2017, the Defendants failed to respond to any of the inmates complaints about the violations of their civil rights.  Defendants' actions from April 2012 through June 2017 violated James Dolis's constitutional rights and caused him irreversible harm.  All of the Defendants knew of the unconstitutional conditions at Stateville, but, all of the Defendants failed to take reasonable steps to resolve these unconstitutional conditions at Stateville.  James Dolis files this complaint seeking damages for the harm caused.

## PARTIES

12.     Plaintiff, James Dolis, is an individual citizen of the United States of America and the State of Illinois who was wrongfully incarcerated from February of 1999 through June of 2017.  He was incarcerated from 2012 through June 9, 2017 at Stateville.

3

13.     Defendant IDOC is a government agency in charge of the administration of all Illinois state prisons.  IDOC operates under color of state law at all times relevant to this First Amended Complaint.

14.     Defendant, John Baldwin was the Director of the IDOC.  Director Baldwin was in that position from in or around August 2015 through June 2017.  Baldwin acted under the color of state law at all times relevant to this First Amended Complaint.

15.     Defendant, Salvador Godinez, was also a Director of the IDOC.  Director Godinez was in that position from in or around May 2011 through March 2014.  Godinez acted under the color of state law at all times relevant to this First Amended Complaint.

16.     Defendant, Randy Pfister, was also a Warden at Stateville.   Warden Pfister was in that position from in or around November 2015 through June 2017.  Pfister acted under the color of state law at all times relevant to this First Amended Complaint.

17.     Defendant, Nicholas Lamb, was a Warden at Stateville.  Warden Lamb was in that position from in or around April 2015 through June 2017.  Lamb acted under the color of state law at all times relevant to this First Amended Complaint.

18.     Defendant, Tarry Williams, was also a Warden at Stateville.   Warden Williams was in that position from in or around 2014 through 2015.  Williams acted under the color of state law at all times relevant to this First Amended Complaint.

19.     Defendant, Marcus Hardy, was also a Warden at Stateville.   Warden Hardy was in that position from in or around December 2009 through December 31, 2012.  Hardy acted under the color of state law at all times relevant to this First Amended Complaint.

20.     Defendant, Dr. Dimitrios Patrianakos, was at all times relevant a physician

4

employed by defendant Cook County to provide health care services at the Cook County Department of Corrections at Cermak Health Services and IDOC.

## JURISDICTION

21.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 as a matter arising under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution, and under 28 U.S.C. § 1343 as a civil action authorized by law to redress the deprivation of Matthews' rights under color of state law.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the acts giving rise to Plaintiffs' claims occurred at Stateville in Will County, which is located in the Northern District of Illinois.

## COUNT I – DELIBERATE INDIFFERENCE TO HAZARDOUS PRISON CONDITIONS

### (SALVADOR GODINEZ, JOHN BALDWIN, RANDY PFISTER, TARRY WILLIAMS, NICHOLAS LAMB and MARCUS HARDY,)

Plaintiff, JAMES DOLIS, by and trough his attorney James J. Macchitelli, alleges against the Defendants, SALVADOR GODINEZ, JOHN BALDWIN, RANDY PFISTER, TARRY WILLIAMS,  NICHOLAS LAMB and MARCUS HARDY, and states as follows:

23.     Plaintiff, James Dolis, realleges and incorporates herein by reference the foregoing Paragraphs 1 to 22 of the First Amended Complaint as if stated fully herein.

24.     The Eighth Amendment to the United States Constitution protects individuals from cruel and unusual punishment.  These protections apply equally to the states and  all divisions and entities, including departments of corrections, prison facilities, prison staff, and Correctional Officers acting under the color of state law.

25.     At all relevant times, named Defendants acted under color of state law.

26.     As alleged above, the hazardous conditions that James Dolis experienced while imprisoned at Stateville, at F-House, subjected James Dolis to a serious deprivation of basic human needs.  The conditions James Dolis was exposed to, and named Defendants failed to cure, included the following:

a.      mold growing every where;

b.      raw sewage in flooding and pooling water;

c.      infestation of vermin including mice, roaches, and spiders;

d.      structural deterioration that included leaking sewage;

e.      restricted air circulation;

f.      unsanitary and tainted drinking water; and

g.      extreme cold and substantial heat.

27.     These inhumane conditions amount to cruel and unusual punishment, violating James Dolis's rights to decency and denying him of basic human needs.   The inhumane prison conditions were demonstrated through the IDOC's decision to shut down the F-House, though not until after James Dolis had already suffered through five years of living in those conditions and after James Dolis acquired squamous cell carcinoma of the right nostril.

28.     The inhumane prison conditions caused serious injuries to James Dolis, including surgery to remove infected parts of his facial bones, chemotherapy, and permanent disfigurement all of which caused his severe pain and discomfort, both physically and emotionally.

29.     Had Defendants, as prison officials, responded to James Dolis's complaints and numerous grievances and pleas as well as those complaints and grievance of hundreds of

other inmates, those serious injuries could have been prevented.

30.     Additionally, the inhumane conditions resulted in painful rashes, back pain, skin lesions, sleep deprivation, numbness of the extremities, and debilitating anxiety and depression and a form of tuberculosis that James Dolis acquired while he was incarcerated in IDOC.

31.     Despite having knowledge of the hazardous conditions that threatened James Dolis's health and safety, named Defendants disregarded the risks, taking no action to try and address his and numerous other inmates numerous complaints and pleas for assistance.

32.     Therefore, Defendants have acted with deliberate indifference toward hazardous prison conditions in violation of the Eighth Amendment.   Defendants' actions have deprived James Dolis of his right to be free from cruel and unusual punishment.

33.     However, as the years passed, James Dolis recently in May of 2019, learned that the conditions of mold and standing water at Stateville were a terrible condition that caused him to acquire squamous cell carcinoma.  Before May of 2019, James Dolis never knew the extreme injury that these conditions caused him to suffer.

**PRAYER FOR RELIEF**

WHEREFORE, Matthews prays for judgment as follows:

a.     For a declaration that named Defendants, individually and collectively, have violated James Dolis's rights under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983;

b.     For an award of compensatory and punitive damages in James Dolis's favor against all Defendants in an amount sufficient and in excess of $300,000.00 to compensate him for the physical pain and mental anguish suffered by him due to

the deliberate indifference and intentional misconduct of the Defendants, but in no

event less than an amount to be determined at trial;

c.      For costs, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

d.      For such other and further legal, equitable and other relief as this Court deems just

and proper.

**COUNT II – PATTERN AND PRACTICE OF DELIBERATE
INDIFFERENCE TO HAZARDOUS PRISON CONDITIONS**

(Illinois Department of Corrections)

Plaintiff, JAMES DOLIS, by and trough his attorney James J. Macchitelli, alleges against

the Defendant, ILLINOIS DEPARTMENT OF CORRECTIONS ("IDOC"), and states as follows:

34.     James Dolis realleges and incorporates herein by reference the foregoing

Paragraphs 1 to 32 of the First Amended Complaint as if stated fully herein.

35.     During James Dolis's incarceration at Stateville, primarily in the rounded structure

of F-House, he had the occasion to observe multiple cells.  James Dolis observed similar

inhumane conditions in neighboring cells at Stateville.  These conditions included mold, vermin,

structural damage, standing water and leakage.

36.     James Dolis was also moved across multiple cells in F-House during his time at

Stateville, experiencing these inhumane conditions in all cells he inhabited.

37.     James Dolis was also aware of numerous other inmates who also complained to the

active wardens and other officers of the inhumane conditions that they were forced to live in at

Stateville.

38.     Various other prisoners at Stateville over the past several years have been

subjected to the same conditions as James Dolis. These prisoners have complained to prison officials about the inhumane conditions, but their requests were ignored, and IDOC failed to correct or improve the state of the cells.

39.     However, as the years passed, James Dolis recently in May of 2019, learned that the conditions of mold and standing water at Stateville were a terrible condition that caused him to acquire squamous cell carcinoma. Before May of 2019, James Dolis never knew the extreme injury that these conditions caused him to suffer.

40.     The inhumane prison conditions caused serious injuries to James Dolis, including surgery to remove infected parts of his facial bones, chemotherapy, and permanent disfigurement all of which caused his severe pain and discomfort, both physically and emotionally.

41.     The John Howard Association of Illinois, an independent organization that monitors correctional facilities throughout the state, reported that conditions in F-House were "unsanitary, inhumane, and degrading for prisoners," detailing many of the same inhumane conditions that James Dolis and others have complained about to the IDOC.

42.     In December of 2016, it was announced that F-House had to be closed down because it was uninhabitable and hazardous to its prisoners. F-House was the state's oldest and most costly prison housing unit, and the rounded structure of the unit was found to promote a hazardous and chaotic environment.

43.     These allegations reflect the general pattern and practice of IDOC's repeated deliberate indifference to the inhumane prison conditions that existed at Stateville's F-House. IDOC failed to take steps to ensure James Dolis's and others' constitutional rights to basic human needs were met.

44.     IDOC has denied Stateville's F-House prisoners access to basic human needs through its inhumane prison conditions, and knowingly disregarded the risks to these prisoners' health and well-being by, among other things, refusing to take corrective measures and allowing and condoning the actions of the prison officials in disregarding the prisoners' complaints.

45.     IDOC's actions, or lack thereof, are in contravention of the policies and procedures in place at Stateville.  Alternatively, IDOC has failed to institute proper policies and procedures at Stateville to ensure prisoners are free from living with inhumane prison conditions.

## PRAYER FOR RELIEF

WHEREFORE, James Dolis, prays for judgment as follows:

a.      For a declaration that IDOC has violated James Dolis's rights under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983;

b.      For an award of compensatory and punitive damages in James Dolis's favor against IDOC in an amount in excess of $300,000 and sufficient to compensate him for the physical pain and mental anguish suffered by him due to the pattern and practice of deliberate indifference to the inhuman prison conditions, but in no event less than an amount to be determined at trial;

c.      For costs, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

d.      For such other and further legal, equitable and other relief as this Court deems just and proper.

10

## COUNT III - INADEQUATE MEDICAL CARE

### (DR. DIMITRIOS PATRIANAKOS)

Plaintiff, JAMES DOLIS, by and trough his attorney James J. Macchitelli, alleges against

the Defendant, DR. DIMITRIOS PATRIANAKOS, and states as follows:

46.     James Dolis spent some time incarcerated at Cook County Jail and while he was

incarcerated at Cook County Jail in 2016, James Dolis suffered constant discomfort from severe

congestion in his right nostril and constant tearing from a swollen right eye.

47.     Plaintiff made written requests for medical care for his severe congestion in his

right nostril and constant tearing from his swollen right eye.  Plaintiff was seen three times by

Defendant, Dr. Dimitrios Patrianakos, and each time Defendant, Dr. Dimitrios Patrianakos,

dilated Plaintiff's eye and looked at Plaintiff's eye with a scope and provided Plaintiff with eye

drops and stated there was nothing wrong.  Defendants deliberately ignored James Dolis's pleas.

48.     In December of 2016, Plaintiff was transferred back to Stateville Correction Center

and he was attacked by another inmate and was taken to see an ENT at Stroger Hospital for a

punctured ear drum.  Plaintiff explained he was having problems with right nostril and right eye.

The ENT gave Plaintiff a nasal spray and because the infection in his right nostril continued , after

six weeks a CT scan was ordered.

49.     Plaintiff was made to wait two and one-half months for the CT scan, and when the

CT scan was done in March of 2017, Plaintiff's condition was diagnosed as stage 3 cancer.

50.     The ophthalmologist that examined Plaintiff three times in 2016 is believed to be

Dr. Dimitrios Patrianakos, but, because Plaintiff's demand for police records and medical records

has not been complied with by Defendant, Plaintiff has been unable to determine if the

ophthalmologist that treated him was Dr. Dimitrios Patrianakos but believes it was Dr. Dimitrios Patrianakos.

51.     The ophthalmologist that treated Plaintiff, who is believed to be Dr. Dimitrios Patrianakos, refused to order any diagnostic tests and failed to order that Plaintiff undergo CT scan or MRI, and did not take any action other than to prescribe some eye drops to Plaintiff.

52.     All of 2016, Plaintiff remained in discomfort from infection in and severe congestion in right nostril and Plaintiff experienced constant tearing from right swollen eye, but, his requests and demands for treatment were ignored by Cook County Jail and its personnel.

53.     In March of 2017, while seeing a treating doctor at Stroger Hospital for injuries sustained by a beating from an inmate, Plaintiff convinced the ENT specialist that his severe right nasal congestion had continued and his right eye continued to tear and remained swollen was serious and Plaintiff needed a CT scan.

54.     Plaintiff  remained with constant discomfort from right nasal congestion and constant tearing from swollen right eye for more than one year before a treating doctor at Stroger Hospital recommended and demanded a CT scan.

55.     After two and one-half month wait, in March of 2017, certain diagnostic tests were performed on Plaintiff and it was discovered that Plaintiff was suffering from Stage 3 squamous cell cancer of the maxillary sinus.

56.     Plaintiff remained at the Jail until June 9, 2017; during this period, plaintiff receive treatment for his cancer by surgical intervention, radiation and chemotherapy.

57.     Following his release from the Jail on June 9, 2017, Plaintiff continued to receive treatment for his cancer by surgical intervention, radiation and chemotherapy.

58.     Because of Dr. Dimitrios Patrianakos failure to order any type of diagnostic test, James Dolis's cancer was allowed to spread into the bones of his face which required much more aggressive treatment and which caused permanent disfigurement.

59.     Because of Dr. Dimitrios Patrianakos failure to order any type of diagnostic test, caused James Dolis to suffer undue and unnecessary pain and suffering, facial disfigurement, and mental anguish, as well as further injury.

60.     The misconduct described by Dr. Dimitrios Patrianakos in this Count was undertaken under color of law and constituted cruel and unusual punishment, in violation of the Eighth Amendment of the United States Constitution.

61.     As a result of the foregoing, Plaintiff was deprived of his rights secured by the Eighth and Fourteenth Amendments to the Constitution of the United States, and was required to endure great pain and suffering, facial disfigurement, and suffered other personal injuries.

62.     Plaintiff hereby demands trial by jury.

WHEREFORE Plaintiff requests that damages be awarded against Defendant, Dr. Dimitrios Patrianakos, in an amount in excess of three hundred thousand, and that the Court grant any other relief that it deems fair and equitable, plus the costs and attorney's fees.

### COUNT IV -  Medical Negligence

### (DR. DIMITRIOS PATRIANAKOS)

Plaintiff, JAMES DOLIS, by and trough his attorney James J. Macchitelli, alleges against the Defendant, DR. DIMITRIOS PATRIANAKOS, and states as follows:

63.     James Dolis realleges and incorporates herein by reference the foregoing Paragraphs 46 to 60 of the First Amended Complaint as if stated fully herein.

64.     At all relevant times, Defendant, Dr. Dimitrios Patrianakos, had a duty to act in accordance with the standards of care which would be provided by a reasonably careful medical doctor in similar  circumstances in providing medical care to James Dolis.

65.     Defendant, Dr. Dimitrios Patrianakos, breached that duty in that he negligently failed to order any diagnostic test such as a CT Scan or MRI, knowing that he had a serious problem with congestion.

66.     As a direct and proximate result of Defendant, Dr. Dimitrios Patrianakos, failure to order diagnostic tests such as CT Scan or MRI, James Dolis's nasal infection was allowed to travel and progress to his facial bones, infect his facial bones and cause substantial complications.

67.     As a direct and proximate result of Defendant, Dr. Dimitrios Patrianakos's, acts and omissions, as set forth above, James Dolis suffered excruciating pain at that time and for forever after has become liable for substantial medical  expenses and has suffered severe emotional distress as well as experienced severe disfigurement of his face.

68.     Because Defendant, Dr. Dimitrios Patrianakos, has not turned over his medical records nor has Cook County, Plaintiff's expert medical doctor has stated verbally that there seems to be viable cause of action, but, awaits to receive the medical records before the medical doctor provides a report under 735 ILCS  5/2-622.

WHEREFORE Plaintiff requests that damages be awarded against Defendant, Dr. Dimitrios Patrianakos, in an amount in excess of three hundred thousand, and that the Court grant any other relief that it deems fair and equitable

PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS OF THIS COMPLAINT

Respectfully submitted,

*James J. Macchitelli*

James J. Macchitelli

Attorney Number: 6208773 - Illinois
James J. Macchitelli
Attorney for Plaintiff
1051 Perimeter Drive, Suite 400
Schaumburg, Illinois 60173
847-414-4532
Jimmymacclaw@gmail.com

15